**UNITED STATES of America, Plaintiff,**

v.

**Alvin Irwin MOSS, et al., Defendants.**

**No. 02–20165–D/P.**

United States District Court, W.D. Tennessee, Western Division.

Nov. 10, 2004.

Robert G. Chadwell, McKay Chadwell, PLLC, Seattle, WA, for Defendant.

Christopher E. Cotten, Dan Newsom, U.S. Attorney's Office, Memphis, TN, for Plaintiff.

Michael B. Neal, Armstrong Allen, PLLC, Memphis, TN, for Warren Castray.

## ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT ALVIN IRWIN MOSS'S MOTION TO DISMISS THE INDICTMENT RE: LACK OF SPECIALTY AND EXPIRATION OF THE STATUTE OF LIMITATION

DONALD, District Judge.

Before the Court is the motion of Alvin Irwin Moss ("Defendant") to dismiss the indictment against him based on lack of specialty and the expiration of the statute of limitation. Defendant asserts that the Court should dismiss all crimes of money laundering alleged in the indictment because the extradition agreement prohibits the prosecution of Defendant for these crimes. Defendant further asserts that the remaining counts of the indictment are subject to dismissal for failure to comply with the five-year limitation period of 28 U.S.C. § 3282.[1] For the following reasons,

1. Defendant premises his argument concerning the statute of limitation *inter alia* on this

the Court **DENIES** in part and **GRANTS** in part Defendant's motion to dismiss the indictment.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

On May 8, 2002, the United States returned an 89–count indictment against Defendant. The indictment charges Defendant with violations of 18 U.S.C. § 1962(c) (substantive criminal offenses pursuant to the Racketeer Influenced and Corrupt Organizations Act ("RICO")), 18 U.S.C. § 1962(d) (RICO conspiracy), 18 U.S.C. § 1956(a)(2) (money laundering), and 18 U.S.C. § 1341 (mail fraud).

Defendant resided in Costa Rica at the time the indictment was returned. The United States government therefore initiated Defendant's extradition to the United States. On October 31, 2003, a Costa Rican trial court determined that Defendant should be extradited for all crimes for which the United States sought extradition. On January 26, 2004, the Costa Rican appellate court reversed in part holding that Defendant Moss could not be tried in the United States for crimes of money laundering. The appellate court reasoned that money laundering was not a crime in Costa Rica before January 11, 2002, which date proceeded the acts of money laundering alleged in the indictment. After the appellate court ruling, Costa Rica through its Ministry of Foreign Relations sought assurance from the United States that Defendant would not be tried for crimes of

money laundering and that, if convicted, he would not be incarcerated for more than fifty years.

On March 2, 2004, the United States agreed to Costa Rica's conditions, assuring in pertinent part:

> The United States of America can provide the requested assurance to Costa Rica that Alvin Erwin Moss, upon conviction, will not receive a penalty higher than 50 years of imprisonment because the prosecutor for this case has promised to inform the judge in the United States of this assurance to Costa Rica. . . .

> Regarding the request for a rule of specialty assurance, pursuant to Article 16 of the Extradition Treaty, Alvin Erwin Moss a/k/a Moss, will not be detained, tried or punished in the United States for offenses other than those for which extradition has been granted. . . . The provisions of Article 16 are applicable to the prosecution . . . and are enforceable in United States Courts, even absent express assurances to Costa Rica.

On April 12, 2004, the Costa Rican trial court requested that the Costa Rican Secretariat of the Supreme Court of Justice notify the United States that the appellate court's extradition resolution was binding and that it could extradite Defendant to answer "solely for crimes of Mail Swindle, Electronic Fraud, Conspiracy, Import or Transportation of lottery interests and ad-

Court's April 22, 2003 Order Granting Defendants' Motions to Dismiss the Indictment ("April 22, 2003 Order"). The Court notes, however, that on July 6, 2004, the United States Court of Appeals for the Sixth Circuit overruled the April 22, 2003 Order. Accordingly, any argument that Defendant posits based on the April 22, 2003 Order is unavailing.

Defendant also relies on arguments previously asserted by Defendants in motions to

dismiss which were filed prior to the instant motion. These arguments have been renewed by Defendants based on the appellate court's reversal of the Court's April 22, 2003 Order. The Court will not rule on these arguments in the instant motion, however, because these arguments are more thoroughly addressed by the parties in more recent filings supplementing another motion to dismiss. Accordingly, the Court will address these arguments in a later order.

vertising and Contraband...." On April 15, 2004, the United States requested that Defendant be handed-over. On April 16, 2004, the Costa Rican trial court approved by written order Defendant's release to the United States authorities, wherein the trial court again reiterated that Defendant was not to be detained, tried, or sanctioned for crimes other than those expressly agreed to by Costa Rica. Defendant is currently being detained by the United States government while awaiting prosecution for the charges asserted in the eighty-nine count indictment.

## II.  *ANALYSIS*

Defendant asserts the rule of specialty requires the Court to dismiss all crimes of money laundering alleged in the indictment, including 1) Counts 73 through 88, substantive money laundering counts; and 2) Counts 1, substantive RICO charges; 2, RICO conspiracy charges; and 89, RICO forfeiture charges. The government asserts that the extradition agreement and treaty do not require the Court to dismiss any of the counts charged in the indictment.

▆▆▆ The rule of specialty is a legal principle recognized by the United States in extradition matters. *See United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886). Pursuant to the rule of specialty, an individual may not be prosecuted for an offense in the country that requested extradition absent the extraditing country's grant of extradition for the offense. *Id.* at 430, 7 S.Ct. 234 (holding "a person who has been brought within the jurisdiction of the court by virtue of proceedings under an extradition treaty, can only be tried for one of the offences described in that treaty, and for the offence with which he is charged in the proceedings for his extradition, until a reasonable time and opportunity have been given him, after his release or trial upon such charge, to return to the country from whose asylum he had been forcibly taken under those proceedings."). The United States Court of Appeals for the Sixth Circuit has recognized that the rule of specialty bars the prosecution of an individual for unextradited crimes. *See United States v. Garrido-Santana*, 360 F.3d 565, 578 (6th Cir. 2004).

▆▆▆ Thus, the crimes for which Defendant may be prosecuted depend on the extradition agreement and the extradition treaty between the United States and Costa Rica. The extradition treaty between the governments of the United States and Costa Rica provides:

ARTICLE 16

Rule of Specialty

(1) A person extradited under this Treaty may be detained, tried or punished in the Requesting State only for:

(a) The offense for which extradition has been granted;

(b) A lesser included offense;

(c) An offense committed after the extradition; or

(d) Any offense for which the Requested State consents to the person's detention, trial, or punishment. For purposes of this paragraph, the Requested State may require the submission of the documents mentioned in Article 9.

. . .

(3) Nothing in paragraphs (1) and (2) of this Article shall prevent the detention, trial, or punishment of an extradited person in accordance with the laws of the Requesting State ... if:

(a) The person has left the territory of the Requesting State after extradition and has voluntarily returned to it; or

(b) The person has not left the territory of the Requesting State within 30

days from the day on which that person was free to leave.

The extradition resolution entered by the Costa Rican appellate court held that Defendant cannot be tried in the United States for crimes of money laundering under 18 U.S.C. § 1956(a)(2). The extradition resolution further states that the non-extraditable offenses include Counts 73 through 88 of the indictment. Moreover, the United States government offered the Costa Rican government its written assurance that Defendant would not be detained, tried or punished in the United States for offenses other than those for which extradition was granted.

Thus, the clear language of the extradition resolution provides that Defendant cannot be prosecuted for money laundering, Counts 73 through 88. Moreover, the United States government's written assurance, which acknowledges the United States government's recognition of the rule of specialty as found in Article 16 of the Extradition Treaty, provides that Defendant will not be "detained, tried, or punished ... for offenses other than those for which extradition has been granted." The United States asserts, however, that the Court can overlook the plain language of both the Costa Rican extradition resolution and the written assurance of the United States.

The government relies on *United States v. Thirion*, 813 F.2d 146 (8th Cir.1987), in support of its assertion that the Court is not required by the rule of specialty to dismiss Counts 73 through 88 of the indictment. In *Thirion*, the appellate court examined whether the district court erred when it refused to dismiss the conspiracy count against the defendant per the terms of his extradition. *Thirion*, 813 F.2d at 151. The district court denied the defendant's motion to dismiss the conspiracy count, but instructed the jury not to return a verdict on that count of the indictment.

*Id.* The treaty at issue in *Thirion* provided:

> No person surrendered ... shall be prosecuted, judged or punished for any crime or offense committed prior to his extradition, other than the offense for which his surrender was accorded, and no person shall be arrested or detained by civil process for a cause prior to the extradition, unless, in either case, he has been at liberty for one month to leave the country, after having been tried, or, in case of conviction, after having either served his sentence or obtained.

*Id.* The United States Court of Appeals for the Eighth Circuit upheld the district court's ruling, stating

> The district court correctly determined that Thirion could not be convicted on the conspiracy count. The district court, however, refused to dismiss that count of the indictment. This decision was not necessarily in conflict with the doctrine of specialty since, although Thirion could not then be convicted on the conspiracy count, the Treaty permits subsequent conviction should Thirion remain in the country after having been at liberty for one month to leave.

*Id.*

The United States asserts that paragraph 3 of Article 16 of the Extradition Treaty between the United States and Costa Rica is similar to the treaty in *Thirion*. Paragraph 3 does permit the United States to detain, try, or punish Defendant for money laundering if Defendant leaves the United States and voluntarily returns or if Defendant fails to leave the United States 30 days after being free to leave. The Court agrees that the language of both of the treaties in *Thirion* and in this case are similar. The Court, however, does not agree that *Thirion* should be followed.

■ First, the appellate court in *Thirion* did not state that the district court's decision unequivocally *did not* violate the rule of specialty. Instead, the court stated that the district court's decision "was not necessarily in conflict with the doctrine of specialty...." *Id.* at 151. Moreover, this Court does not find the reasoning in *Thirion* to be persuasive. Paragraph 3 of Article 16 of the Extradition Treaty clearly would allow the United States to detain, try, or punish Defendant for Counts 73 through 88 if Defendant ever left the United States and returned or if he stayed in the United States for 30 days after being allowed to leave. Defendant, however, is unable to leave the country at this time or to return to it, as he is currently incarcerated in the United States. To read paragraph 3 to permit the *current* detainment, trial, or punishment of Defendant for the money laundering counts would be to ignore the plain language of the treaty, which permits the United States to detain, try, or punish Defendant only for the crimes which Costa Rica extradited Defendant. Likewise, such a reading of paragraph 3 would appear to nullify the plain language of the agreement between the United States and Costa Rica with respect to Defendant's extradition. The Court, therefore, finds that Counts 73 through 88 of the indictment, which allege the offense of money laundering, should be dismissed based on the Extradition Treaty and agreement/resolution between the governments of Costa Rica and the Untied States in the instant case.

■ The Court must next determine whether Counts 1, 2, and 89 should be dismissed because they rely on money laundering as the RICO predicate acts. Defendant asserts that these counts should be dismissed because money laundering is the predicate act which must be proven to establish the offenses. To determine whether these counts should be dismissed, the Court must again examine the extradition agreement between the United States and Costa Rica.

The United States, when making its extradition request, asked that Defendant be extradited on all charges contained in the indictment, specifically including RICO and RICO conspiracy. In the appellate court's opinion, the Costa Rican court discusses Defendant's objections regarding the RICO and RICO conspiracy charges in part IV of the opinion. The appellate court concludes its analysis of Defendant's objections by stating that "the ground of appeal is rejected." More importantly, however, the Costa Rican appellate court clearly indicates that the only counts for which Costa Rica refuses to grant the extradition of Defendant is for Counts 73 through 88.

■ Moreover, in *United States v. Saccoccia*, 58 F.3d 754 (1st Cir.1995), the court held that an offense which itself is not extraditable can serve as a predicate act in connection with another extraditable offenses. In *Saccoccia*, the court considered whether evidence of Currency Transaction Reporting ("CTR") offenses which were alleged as both substantive and predicate RICO acts was properly introduced. *Saccoccia*, 58 F.3d at 768. The United States Court of Appeals for the First Circuit held that it would have been perfectly proper for the government to seek convictions on the RICO counts based on the CTR predicates. *Id.* The Court reasoned that

> [i]n general, we do not believe that there can be a violation of the principle of specialty where the requesting nation prosecutes the returned fugitive for the exact crimes on which the surrendering nation granted extradition. So it is here: the [Swiss Federal Tribunal] twice

approved appellant's extradition on counts that prominently featured CTR offenses as predicates. This approval-to which we must pay substantial deference that is due to a surrendering court's resolution of questions pertaining to extraditability, [citation omitted], strongly suggests that the RICO and Travel Act counts, despite their mention of predicates which, standing alone, would not support extradition, are compatible with the criminal laws of both jurisdictions.

*Id.*

The government asserts that, like *Saccoccia,* it intends to prosecute Defendant only for those crimes which Costa Rica granted extradition. The government asserts, and the Court agrees, that the Costa Rican appellate court's resolution supports the prosecution of the RICO offenses despite the predicate acts being money laundering. Accordingly, the Court finds that Counts 1, 2, and 89 of the Indictment should not be dismissed.

## III. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendant's motion to dismiss Counts 73 through 88 of the Indictment. The Court **DENIES**, however, Defendant's motion to dismiss Counts 1, 2, and 89 of the Indictment.